IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOSHUA MADRID and SARAH ) 
PANTER, Individually and Next Friend of ) 
Their Minor Child, P.M., ) 
 ) 
Plaintiffs, ) 
 ) 
v. )     Case No. 3:24-cv-01060
 )     Judge Richardson/Frensley
UNITED STATES OF AMERICA, ) 
 ) 
 ) 
Defendant. ) 

## ORDER

Pending before the Court is the motion of Defendant The United States of America ("The United States") for leave to amend its answer to assert an affirmative defense and allege negligence on behalf of a third party, Vanderbilt University Medical Center ("VUMC"). Docket No. 42, p. 2. The United States has also filed a supporting memorandum and other supporting documents. Docket Nos. 44, 44-1 through 44-4. Plaintiffs Joshua Madrid and Sarah Panter have filed a response in opposition, and The United States has filed a reply. Docket Nos. 45, 46. For the reasons discussed below, The United States's motion (Docket No. 42) is **DENIED**.

### I. BACKGROUND

Mr. Madrid and Ms. Panter, individually and next friend of their minor child, P.M., brought this medical malpractice lawsuit against The United States, pursuant to the Federal Tort Claims Act, 18 U.S.C. § 2674. Docket No. 1 (Complaint), p. 1.

On September 11, 2021, Ms. Panter delivered baby P.M. at Blanchfield Army Community Hospital at Fort Campbell, Tennessee ("Blanchfield"). *Id.* at 5. Unfortunately, P.M.'s delivery was fraught with complications. *See id.* Mr. Madrid and Ms. Panter allege negligent care from

Blanchfield staff. *Id.* at 20. Mr. Madrid and Ms. Panter allege that "[t]he substandard medical care provided by agents and employees of the United States at Blanchfield Army Community Hospital caused a severe, permanent brain injury to P.M. from hypoxic-ischemic encephalopathy that has resulted in feeding difficulties, seizures, global developmental delays, gross motor developmental delays, fine motor delays, cortical visual impairment, abnormal posture and abnormal mobility/gait." *Id.* at 19.

Pursuant to 28 U.S.C. §§2672 and 2675(a), Mr. Madrid and Ms. Panter filed their claims with the Department of Army ("the Army") on August 30, 2023. *Id.* at 4. Their claims included allegations such as "the cord separated in the middle and remain attached to the umbilical cord and placenta," VUMC's six-hour delay arriving to Blanchfield to transfer P.M. to VUMC's neonatal intensive care unit, and VUMC's failure to "cool" P.M. during transport. Docket No. 42, p. 2. Because the Army did not make a final disposition within sixth months, Mr. Madrid and Ms. Panter considered this a denial and filed this suit in federal court naming The United States as the Defendant. Docket No. 1, p. 5; *see* 28 U.S.C. § 2674(a).

This Court held a Case Management Conference by Telephone on January 9, 2025, where all parties agreed to the February 7, 2025, deadline for motions to amend or add parties. Docket No. 28, p. 3. After the close of expert witness and their reports and a failed mediation, The United States brought this motion to amend seeking to add an additional affirmative defense and to name a third-party contributor, nine months after the deadline. Docket No. 44, p. 2.

## II.     LAW AND ANALYSIS

### A.     Motions to Amend Under Rules 15 and 16

There are two potential standards to consider when determining whether to grant a motion to amend. Rule 16 requires the judge to issue a scheduling order, and provides that "[a] schedule

may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The purpose of this requirement is "to ensure that at some point both the parties and the pleadings will be fixed." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003), *quoting* Fed. R. Civ. P. 16, 1983 advisory committee's notes (internal quotation marks omitted). In contrast, Rule 15 contains a liberal standard instructing that "courts should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision of which standard to apply depends on the timing of the motion. "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary*, 349 F.3d at 909.

The "good cause" requirement is "a threshold that requires late-moving litigants to show that 'despite their diligence they could not meet the original deadline.'" *Shane v. Bunzl Dist. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008), *quoting Leary*, 349 F.3d at 907. In determining whether good cause exists, the "overarching inquiry" is whether the moving party was diligent in attempting to meet the Court's deadlines. *Marie v. Am. Red. Cross*, 771 F.3d 344, 366 (6th Cir. 2014), *quoting Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011). "A plaintiff does not establish 'good cause' to modify a case schedule to extend the deadline to amend the pleadings where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the complaint before the deadline." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014).

While a consideration of potential prejudice to the non-movant is a factor the court should consider in deciding whether to amend a scheduling order, even in the absence of prejudice the moving party must explain its failure to assert the amendment in a timely fashion. *Stewart v. King*, No. 3:09-cv-21, 2011 LEXIS 6583, 2011 WL 237678 at *13 (M.D. Tenn. Jan. 24, 2011). "Where

the plaintiff's explanation for the delay is simply insufficient or not credible, it is appropriate for the court to deny the motion for leave to amend." *Id.*, *citing Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010); *Commerce Benefits Group v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009). Only if the movant establishes "good cause" does the court proceed to the more permissive Rule 15(a)(2) analysis. *Id.*

Now, however, the Court must enforce the purpose of Rule 16, which is that "at some point both the parties and the pleadings will be fixed." *See Leary*, 349 F.3d at 906, *quoting* Fed. R. Civ. P. 16, 1983 advisory committee's notes. That point has arrived, nine months after the deadline for seeking leave to move to amend, and well over a year since the Complaint was filed. *See* Docket No. 1; Docket No. 28, p. 3; Docket No. 42. More importantly, the trial date is rapidly approaching. Here, where a Rule 16 analysis is called for, the standard is whether the moving party was diligent in attempting to meet the Court's deadlines. *See Marie*, 771 F.3d at 366.

**B.     The United States's Motion for Leave to Amend**

Because the Court has entered a scheduling order, the United States must satisfy the good cause standard under Rule 16. Fed. R. Civ. P. 16(b)(4); *Leary*, 349 F.3d at 909. The United States argues it has met the standard for good cause because "[t]his medical malpractice case presents complicated issues that are not immediately measurable without the benefit of medical expertise." Docket No. 44, p. 9.

Mr. Madrid and Ms. Panter argue that "the United States had the relevant medical facts since August 2023—only a lack of diligence can explain their failure to meet their deadline to amend nearly a year and a half later." Docket No. 45, p. 5.

Defendant effectively asks the Court to sever the administrative record from this litigation—treating the client (Blanchfield) as distinct from its counsel (The United States

Attorney's Office).  *See* Docket No. 46, p. 2 ("[Mr. Madrid and Ms. Panter's] broad claims of what 'the Government' knew, and when 'the Government' knew specific factual details purposely conflates administrative work done by Army counsel, and work done by AUSAs in this litigation.").  While the Court may appreciate the practical difficulties the United States Attorney's Office faces, those difficulties are not different from those present in any traditional attorney-client relationship, where counsel is expected to quickly familiarize itself with the factual record, identify the relevant legal issues, and articulate a legal defense under tight deadlines. This is particularly true where, as here, the case involves "complicated issues that are not immediately measurable without the benefit of medical expertise."  Docket No. 44, p. 9.  Nonetheless, the United States offers no justification for its failure to meaningfully engage with the administrative record or seek to extend the February 7, 2025, deadline to do so.

The United States's reliance *Hall-Easley v. Clarksville Operating Grp., LLC*, is unavailing. No. 3:23-cv-00107, 2023 U.S. Dist. LEXIS 188002, 2023 WL 6929330 (M.D. Tenn. Oct. 19, 2023).  The moving party in *Hall-Easley* moved to amend *before* the applicable deadline and, therefore, this Court applied the more liberal Rule 15 standard.  *Id* at \*7. Here, the United States moved to amend its answer nine months *after* the deadline had passed. Although the United States's proffered reasons for seeking to amend largely mirror those advanced in *Hall-Easley*, The United States fails to explain why it could not have sought an amendment prior to the deadline. *See id.* at \*2; Docket No. 44 at p. 10–11. The United States emphasizes that the moving party in *Hall-Easley* had six months to amend or add parties, whereas the United States had only six weeks. Docket No. 44, p. 8.  But the United States again does not articulate why it could not have negotiated for—or requested—an extended deadline of similar length.  As is common in medical malpractice cases, the facts here are not readily understood without medical expertise or extensive

research.  That likely explains why the parties in *Hall-Easley* agreed to a months-long amendment period rather than a matter of weeks.

Because the United States was aware of the underlying facts supporting the proposed amendment, the United States fails to establish "good cause." *See Ross*, 567 F. App'x at 306.  The United States's asserts the importance of expert testimony in formulating its desired defenses.  Docket No. 44, p. 9.  But the United States did not identify any newly discovered information; rather, the expert testimony merely illuminated the significance of facts previously known but overlooked or unappreciated.  In effect, the United States asks this Court to excuse its delay based on an epiphany occurring months after the February 7, 2025, deadline.  Accepting this as satisfying Rule 16(b)'s good-cause standard would undermine the Rule's core purpose: to "ensure that at some point both parties and the pleading with be fixed." *Leary*, 349 F.3d at 906, *quoting* Fed. R. Civ. P. 16 advisory committee's note (1983).  This Court does not view such late-stage determinations as satisfying the good cause standard under Rule 16.

The Court has also considered the potential of prejudice to Mr. Madrid and Ms. Panter, which is significant given that trial is scheduled to begin in less than two months.  Docket No. 28, p. 1.  The Court finds that the United States's explanation for its delay is simply insufficient and does not constitute good cause to modify the Scheduling Order.  *See* Docket No. 28, p. 1; *see also Stewart*, 2011 LEXIS 6583 at *13.  Having found that good cause does not exist, the Court need not proceed to analyze the proposed amendment under Rule 15.  *Id.*; *Commerce Benefits Group*, 326 F. App'x 369 at 376.

### III.  CONCLUSION

For the foregoing reasons, The United States's Motion (Docket No. 42) is **DENIED.**

**IT IS SO ORDERED.**

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**